**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MR. PORTO, INC., d/b/a Custom Display Studios, Respondent.**

**No. 77–1058.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 6, 1978.

Decided Dec. 29, 1978.

Elliott Moore, Deputy Associate Gen. Counsel, Aileen Armstrong, Edmund D. Cooke, Jr., N. L. R. B., Washington, D. C., Bernard Gottfried, Director Region 7, N. L. R. B., Detroit, Mich., Margery E. Lieber, Washington, D. C., for petitioner.

Stewart J. Katz, Keller, Thoma, Toppin & Schwarze, Michael L. Smith, Detroit, Mich., for respondent.

Before WEICK and CELEBREZZE, Circuit Judges, and PECK, Senior Circuit Judge.

PER CURIAM.

The NLRB found that respondent had committed an unfair labor practice in refusing to bargain with the certified union.[1] The NLRB petitions for enforcement of its order requiring respondent to bargain with the union.[2] Respondent admits its refusal to bargain, contending that the representation election whereby the union was certified as the exclusive bargaining representative was not fairly conducted. Respondent argues that the election, won 6–3 by the union, was tainted by union misconduct.

Two incidents of union misconduct have been conceded by the NLRB to have occurred. Both events happened a few weeks after the union had filed its representation petition with the NLRB and roughly two months before the union election. The first incident consisted of several union adherents in a picket line, in the presence of union representatives, threatening at least one other employee with physical violence if he did not support the union. The second incident consisted of a union representative and adherent placing nails in respondent's driveway.

The NLRB concedes that these actions on the part of the union were illegal.

---

1. Sign, Pictorial and Display Union Local 591, International Brotherhood of Painters and Allied Trades, AFL–CIO.

2. 227 N.L.R.B. No. 29.

We agree.[3] It argues, however, that they were isolated incidents and that because they occurred two months before the election their effect had dissipated. We disagree. The NLRB acted arbitrarily in the exercise of its wide discretion. *See Harlan # 4 Coal Co. v. NLRB*, 490 F.2d 117, 120 (6th Cir.), *cert. den.* 416 U.S. 986, 94 S.Ct. 2390, 40 L.Ed.2d 763 (1974).

In light of the very small unit involved and the closeness of the representation election (a switch of only two votes would have altered the outcome), we cannot say that the illegal acts of intimidation by the union were so remote as to have had no effect on the election. Common sense teaches that threats of physical violence do not subside in only two months. Respondent has met its burden of showing the election was unfair.[4] *See NLRB v. Savair Mfg. Co.*, 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973). *Cf. NLRB v. Union Nacional de Trabajadores*, 540 F.2d 1 (1st Cir. 1976), *cert. den.* 429 U.S. 1039, 97 S.Ct. 736, 50 L.Ed.2d 750 (1977).

This cause is distinguishable from *NLRB v. Bostik Division, USM Corp.*, 517 F.2d 971 (6th Cir. 1975).[5] There we held that "isolated incidents [of "vague threats" and "minor damage"] occurring among some 119 employees over a three month period preceding the election" were insufficient to set the election aside. *Id.* at 975. Here, on the other hand, because of the very small unit involved, the incidents cannot be said to be isolated.

We also noted in *Bostik Division* that a close election is a factor which demands that even minor infractions be scrutinized carefully. *Id.* at 975 n. 5. While there, the fact that a change of only four votes would have reversed the election result was not found critical, here a change of

only two votes would reverse the result. We do not suggest that the line will always be crossed between two and four votes. We only hold that this factor, combined with the other circumstances here, serves to distinguish this case from *Bostik Division.*

The NLRB notes that respondent previously directly challenged the representation election raising the same issues raised in this case. A hearing officer found that the illegal acts of intimidation occurred but that they were too remote and isolated to have had a significant impact on the election. This decision was affirmed and adopted by the Regional Director. The NLRB denied respondent's request for review. In the instant unfair labor practice proceeding, since respondent admittedly refused to bargain the NLRB did not conduct a new hearing into the issues raised but rather granted General Counsel's motion for summary judgment. It ruled that respondent was not entitled to relitigate issues which had been previously litigated in the prior representation proceeding.

The NLRB argues to his court that it was appropriate for the NLRB to refuse to hold another hearing and not to allow respondent to relitigate issues previously resolved against it. "Historically, the representation issue once fully litigated in the representation proceeding could not be relitigated in an unfair labor practice proceeding." *Magnesium Casting Co. v. NLRB*, 401 U.S. 137, 141, 91 S.Ct. 599, 601, 27 L.Ed.2d 735 (1971), *citing Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 162, 61 S.Ct. 908, 85 L.Ed. 1251 (1941). While this rule may well have meant the NLRB need not have granted a new hearing on issues it had already decided, in the absence of new evidence, that has no effect whatsoever on this court. The prior proceeding, resolved adversely to respondent, was not reviewable in this court and it has no bind-

---

3. *See NLRB v. Union Nacional de Trabajadores*, 540 F.2d 1 (1st Cir. 1976), *cert. den.* 429 U.S. 1039, 97 S.Ct. 736, 50 L.Ed.2d 750 (1977).

4. The party who seeks to overturn the results of a representation election has the burden of showing the election was not fairly conducted. *NLRB v. Mattison Machine Works*, 365 U.S. 123, 81 S.Ct. 434, 5 L.Ed.2d 455 (1961); *NLRB*

*v. Bostik Division, USM Corp.*, 517 F.2d 971, 975 (6th Cir. 1975); *NLRB v. Dean Foods Co.*, 421 F.2d 664 (6th Cir.), *cert. den.* 398 U.S. 939, 90 S.Ct. 1843, 26 L.Ed.2d 271 (1970).

5. *See also Matlock Truck Body & Trailer Corp. v. NLRB*, 495 F.2d 671 (6th Cir.), *cert. den.* 419 U.S. 964, 95 S.Ct. 224, 42 L.Ed.2d 178 (1974).

ing effect on us.[6] The NLRB, by adopting its result in the prior representation proceeding in this unfair labor practice proceeding, effectively makes this court's review in the unfair labor practice proceeding a review of the prior representation proceeding. *See Magnesium Casting, supra,* 401 U.S. at 142–43, 91 S.Ct. 599.[7] Thus, our holding here is not that the NLRB erred procedurally in granting summary judgment since the facts had already been determined by it and no new evidence was offered. Rather, we hold that the NLRB erred substantively in adopting the erroneous legal conclusions of the prior representation proceeding.

The petition for enforcement is denied, the election is ordered set aside, and the cause is remanded to the NLRB for further proceedings consistent with this opinion. Costs taxed to the NLRB.

---

6. *See, e. g., Peerless of America, Inc. v. NLRB,* 576 F.2d 119, 121 (7th Cir. 1978); *Hecla Mining Co. v. NLRB,* 564 F.2d 309, 313 (9th Cir. 1977).

7. *See also* cases cited in note 6, *supra.*